

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**ERIC B. SAUB,**

Plaintiff,

v.                                                                    Civil Action No. **3:16CV407**

**CORRECT CARE SOLUTIONS,**

Defendant.

## MEMORANDUM OPINION

Eric B. Saub, a Virginia inmate proceeding *pro se* and *in forma pauperis*, brings this action pursuant to 42 U.S.C. § 1983. The matter is proceeding on Mr. Saub's Second Particularized Complaint ("Complaint," ECF No. 15). Mr. Saub alleges that he suffers from a number of ailments and that Defendant Correct Care Solutions ("CCS") denied him adequate medical care during his detention in the Hampton Roads Regional Jail (the "Jail"). Specifically, Mr. Saub contends that CCS denied him adequate medical care for his: low blood sugar/hypoglycemia; migraines, nausea, and dizziness; constipation; mental health issues; dental problems; and shoulder pain. This matter is before the Court on the Motion for Summary Judgment filed by CCS. (ECF No. 31.) Mr. Saub has responded (ECF Nos. 37, 39, 49) and seeks relief under Federal Rule of Civil Procedure 56(d)[1] to stay or deny summary judgment until he pursues discovery. (ECF No. 38.) For the reasons set forth below, the Court finds that CCS is entitled to summary judgment and that Mr. Saub is not entitled to relief under Federal Rule of Procedure 56(d).[2]

---

[1] Rule 56(d) provides that, "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may" deny the motion for summary judgment or issue any other appropriate order. Fed. R. Civ. P. 56(d).

[2] Familiarity with the basis for CCS's request for summary judgment is necessary to understanding the propriety of Mr. Saub's request for relief under Rule 56(d). Therefore, the Court

# I. PROCEDURAL HISTORY

By Memorandum Order entered on December 12, 2017, the Court informed Mr. Saub that the action would proceed on his Second Particularized Complaint. (ECF No. 18.) On February 11, 2018, CCS, the only defendant identified by name in the Second Particularized Complaint, filed its Answer. (ECF No. 26.) By Memorandum Order entered on February 23, 2018, the Court informed Mr. Saub that he could now pursue discovery to identify any of the unknown employees of CCS that he wished to add as defendants to the action. (ECF No. 28.) Additionally, the Court denied Mr. Saub's Motion to Amend without prejudice to refile in conjunction with an amended complaint that properly identifies the John Doe employees of CCS. (*Id.*)

On May 21, 2018, CCS filed its Motion for Summary Judgment. (ECF No. 31.) CCS attached to the Motion for Summary Judgment almost two-hundred pages of Mr. Saub's medical records and his correspondence with officials at the Jail. (ECF No. 32–2.)

On May 21, 2018, Mr. Saub moved for an extension of time to respond to the Motion for Summary Judgment. (ECF No. 34.)

On May 23, 2018, Mr. Saub filed a motion requesting, *inter alia*, that CCS produce his medical records and additional information about its employees at the Jail. ("May 23 Motion for Discovery," ECF No. 35.)

By Memorandum Order entered on May 31, 2018, the Court granted the Motion for Extension of Time. (ECF No. 36.) On July 9, 2018, Mr. Saub filed his Response to the Motion for Summary Judgment. (ECF No. 37.) In conjunction with that Response, Mr. Saub submitted his Affidavit/Declaration Supporting Need for Discovery ("Discovery Declaration," ECF 38.)

---

addresses the Motion for Summary Judgment prior to addressing Mr. Saub's request to stay summary judgment while he pursues discovery.

On July 12, 2018, CCS filed its Reply to Mr. Saub's Response to the Motion for Summary Judgment. (ECF No. 41.)

By Memorandum Order entered on August 15, 2018, the Court addressed Mr. Saub's May 23 Motion for Discovery. (ECF No. 44.) The Court informed Mr. Saub that discovery was initially to be conducted on an informal basis between the parties and further informed Mr. Saub of the appropriate procedures he needed to utilize before filing a motion seeking to compel discovery. (*Id.*) The Court denied the May 23 Motion for Discovery without prejudice. (*Id.*)

Months later, on October 1, 2018, Mr. Saub filed a Motion for Leave to Respond, wherein he sought to file a further response to the Motion for Summary Judgment. (ECF No. 46.) By Memorandum Order entered on October 9, 2018, the Court granted Mr. Saub's Motion for Leave to Respond to the extent that Mr. Saub was directed to file any further response within fifteen (15) days of the date of entry thereof. (ECF No. 47.)

On November 2, 2018, Mr. Saub filed his final response to the Motion for Summary Judgment. (ECF No. 49.) In that response, Mr. Saub asserts that his jailers at the Western Tidewater Regional Jail transmitted Mr. Saub's legal materials to his investigator and his subsequent jailers at the Northern Neck Regional Jail and Sussex II State Prison will not accept mail from his investigator. (*Id.* at 1.)

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility of informing the Court of the basis for the motion and identifying the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here

the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c), (e) (1986)). In reviewing a summary judgment motion, the Court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere "*scintilla* of evidence" will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (quoting *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). Nor can a nonmoving party "create a genuine dispute of fact through mere speculation." *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008) (quoting *Beale v. Hardy*, 769 F.3d 213, 214 (4th Cir. 1985)). Accordingly, "[t]he nonmovant can show that a dispute is genuine only if it provides sufficient evidence so that a 'reasonable jury could return a verdict for the nonmoving party.'" *Wiggins v. DaVita Tidewater LLC*, 451 F. Supp. 2d 789, 796 (E.D. Va. 2006) (quoting *Anderson*, 477 U.S. at 248).

In support of its Motion for Summary Judgment, CCS submitted the affidavit of April Green, the Health Service Administrator at the Jail ("Green Aff.," ECF No. 32–1)[3] and Mr. Saub's medical records ("MR," ECF No. 32–2). In opposition to the Motion for Summary Judgment, Mr. Saub submitted his Affidavit of Fact ("Saub Aff.," ECF No. 37), some of his medical records and grievances from the Jail (ECF No. 37–1), and his Discovery Declaration (ECF No. 38).

---

[3] In her affidavit, Ms. Green cites to Mr. Saub's medical records. Except in those instances where Mr. Saub disputes Ms. Green's statements, the Court generally omits the secondary citations to the medical records.

Of course, the facts offered by affidavit or otherwise must also be in the form of admissible evidence. *See* Fed. R. Civ. P. 56(c)(4). In this regard, the statement in the affidavit or sworn declaration "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *Id.* Therefore, "summary judgment affidavits cannot be conclusory or based upon hearsay." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) (internal citations omitted). For example, Mr. Saub swears that he was seen by a doctor on October 15, 2015. (Saub Aff. ¶ 48.) According to Mr. Saub, that doctor determined that Mr. Saub's headaches, dizziness, and nausea were the result of Mr. Saub's low blood sugar. (*See id.* ¶¶ 46–48.) This statement amounts to inadmissible hearsay for the purposes of demonstrating that Mr. Saub has low blood sugar and that his ailments are traceable to that condition.

Mr. Saub has offered a host of other assertions that are of no importance in assessing the propriety of summary judgment. For example, Mr. Saub swears,

> Despite clearly communicating serious medical needs, at no time did any medical staff (CCS Staff) ever see me to make an informed medical decision.
> Regardless of the seriousness of a medical request, in my observations, I never witnessed or heard of any CCS staff making an informed medical decision by seeing those requesting medical care and commonly would hear complaints on this failure by CCS.

(*Id.* ¶¶ 42, 43 (internal paragraph number omitted).)[4] Assertions of this ilk are insufficient to withstand summary judgment. *See United States v. Roane*, 378 F.3d 382, 400–01 (4th Cir. 2004) (alteration in original) (citations omitted) (internal quotation marks omitted) (observing that "[a]iry generalities, conclusory assertions and hearsay statements [do] not suffice to stave off summary judgment").

---

[4] The Court corrects the capitalization, punctuation, spelling, and spacing in the quotations from Saub's submissions.

In light of the foregoing submissions and principles, the following facts are established for purposes of the Motion for Summary Judgment. Where possible, the Court has attempted to organize the facts by Mr. Saub's different ailments and the attendant medical care for each ailment.

## III. UNDISPUTED FACTS

Mr. Saub was incarcerated in the Jail as a pretrial detainee from May 4, 2015, until July 5, 2016. (Saub Aff. ¶¶ 1, 3.) Except for intermittent court appearances, Mr. Saub remained at the Jail until he was transferred to the Western Tidewater Regional Jail ("WTRJ") on July 5, 2016. (*Id.* ¶ 3.) On December 1, 2015, CCS assumed responsibility for medical care for the inmates at the Jail. (Green Aff. ¶ 1.)

### A. Migraines, Nausea, Dizziness, Alleged Low Blood Sugar, and Constipation

Mr. Saub's medical records do not reflect

> any blood test showing that Mr. Saub had hypoglycemia. His blood was tested on 10/21/15; his blood glucose level was 71 with a normal range of 65 to 99. *Id.* p. 48. This is the only record of the results of a blood test in Mr. Saub's medical records and reflects a normal blood sugar level. Mr. Saub was nonetheless given an order on October 22, 2015 to receive a snack; the order indicates that he was to receive a snack for 90 days; this occurred, including after CCS assumed responsibility for care at HRRJ. *Id.* p. 10.

(*Id.* ¶ 6.) Nevertheless, Ms. Green notes:

> There is a note for 10/22/15 which states "reviewed blood sugar readings and has had several episodes of hypoglycemia in the am." *Id.* p. 86. The referenced blood sugar readings are not found in [Mr. Saub's] records, however. Additionally, that same note for 10/22/15 indicates "reviewed labs with pt, wnl." *Id.* This suggests that even if blood sugar readings were taken, they were within normal limits and/or that [Mr. Saub's] laboratory assessment of his blood sugar was within normal limits. It is unclear, therefore, whether there is any record of an abnormal blood sugar level for [Mr. Saub] and/or any laboratory demonstration of hypoglycemia.

(*Id.* ¶ 7.) Further, another note for that date, by a Nurse Practitioner Boldaker indicates that Mr. Saub's snack should continue for 90 days because of his hypoglycemia. (MR 10.)

On November 22, 2015, Mr. Saub submitted a sick call request wherein he stated that he was "still awaiting doctor follow up from doctor on head, nausea, dizziness & passing blood. . . . [I] have not [been given] meds since 11/15/15." (ECF No. 37–1, at 1.) On November 29, 2015, Mr. Saub was seen by a nurse practitioner and "reported that he had been diagnosed with migraine headaches while living in Orlando Florida . . . . Mr. Saub reported that at that time he would experience a headache 1 or 2 times per month, but that the frequency had increased since his incarceration." (Green Aff. ¶ 3.) Mr. Saub stated that some nausea and vomiting accompanied his headaches. (*Id.*) "The NP performed a neurologic evaluation and found Mr. Saub to be within normal limits. The NP placed Mr. Saub on Ibuprofen, as needed, for headaches and Phenergan, as needed, for nausea and vomiting." (*Id.*)

In the next few days, Mr. Saub apparently left the Jail for a court appearance. (*See id.* ¶ 4.) Mr. Saub's records reflect that he was again admitted to the Jail on December 3, 2015. (*Id.*)

On December 9, 2015, Mr. Saub submitted a sick call request form wherein he requested: to continue the Motrin without stopping as "it help[s] a lot"; to "please resume" his prescription for Phenergan as "it's the only thing that helps" his nausea; and to provide a pill to help him use the bathroom as it has been almost a week since he used the toilet. (ECF No. 37–1 at 4; *see* Green Aff. ¶ 5.)

On December 11, 2015, Mr. Saub submitted an emergency grievance wherein he stated that he did not receive his "lunch time meds today, yesterday, or Tuesday. . . . I have not used the toilet since Wednesday the 2nd [.] [I] have not once received the meds to help me go to the bathroom that medical said was ordered on Nov. 29th." (ECF 37–1, at 5.) Mr. Saub's situation was determined not to be an emergency as a correctional officer found Mr. Saub had "no bm x 3

days -no cramping." (*Id.*) The emergency grievance indicates a sick call appointment was made. (*Id.*) This response to the emergency grievance is dated December 12, 2015, at 1:00 a.m. (*Id.*)

On December 12, 2015, at 6:30 p.m., Mr. Saub submitted an emergency grievance wherein he complained that he had not received his lunch time meds for the fourth time in five days. (*Id.* at 6.) Mr. Saub further complained that he had not received the medicine to help him use the bathroom that he was told he would receive on November 29, 2015. (*Id.*) Less than two hours later, staff responded that, "You do not have medication ordered @ 'lunchtime.' You do not have an order for a laxative. Please put in a sick call slip." (*Id.*)

On January 4, 2016, Mr. Saub submitted a healthcare request wherein he complained his bowel movements occur only about every five days and contain blood. (MR 158.) On January 7, 2016, the triaging staff made an appointment for Mr. Saub and sent a copy of this response to Mr. Saub. (*Id.*)

According to Mr. Saub's medical records, "he was receiving the migraine and nausea medications, as needed, as of December 9, 2015, and that he continued to receive Ibuprofen as needed for pain and Promethazine (Phenergan) as needed for nausea and vomiting just as had been prescribed by the NP." (Green Aff. ¶ 5.) Furthermore, "Mr. Saub continued to receive those medications up to his chronic care visit on February 26, 2016, at which time he was seen by a physician and his prescriptions were changed; medications to assist with bowel movements were added at that time." (*Id.*) Specifically, on that date, Mr. Saub's prescriptions of Ibuprofen and Promethazine were discontinued. (MR 129.) Mr. Saub was prescribed: one 100 mg capsule of Colace for 90 days; 50 mg of hydroxyzine for 7 days; and one dose of magnesium citrate. (*Id.* at 127.)

On February 25, 2016, Mr. Saub submitted an informal complaint asserting that his snack bag, which was used to alleviate his low blood sugar, had been terminated. (ECF No. 37–1, at 12.) On March 16, 2016, the Jail staff responded, "You were seen by the provider on 2–24–16. There is nothing documented related to the need for a snack bag." (*Id.*)

On March 7, 2016, Mr. Saub submitted an informal complaint regarding his dizziness, light headedness, nausea, and headaches. (ECF No. 37–1, at 15.) Mr. Saub asserted that the above issues were caused by low blood sugar. (*Id.*) Mr. Saub stated his prior prescriptions and the evening snack bag had helped, but not cured the problem. (*Id.*) Mr. Saub complained that, since the medical staff had stopped his prior medications and snack bag, his ailments had gotten much worse. (*Id.*) Mr. Saub wanted more medical care to treat these ailments and to have them completely eliminated. (*Id.*) On March 16, 2016, Mr. Saub was informed that he was scheduled to have "lab work done and a follow up with the provider to discuss the results and the possibility of you getting a snack bag." (*Id.*)

After Mr. Saub was transferred to the Western Tidewater Regional Jail on July 5, 2016, a blood test revealed that Mr. Saub's thyroid was underactive. (Saub Aff. ¶ 53.)

### B. Mental Health

On or about December 9, 2015, Mr. Saub submitted a sick call request wherein he asked to see Ms. Edwards as soon as she was available. (ECF No. 37–1, at 3.) A nurse marked the request, "Refer to Pysch." (MR 156.) On January 6, 2016, Mr. Saub submitted an inmate request form wherein he stated that he had "been extremely depressed" and would like to be seen as soon as possible. (ECF No. 37–1, at 7.) Mr. Saub stated that he had submitted "several sick calls going back to October, so I tried this form." (*Id.*) On January 8, 2016, Mr. Saub was informed that he would been seen by mental health at the next available appointment. (*Id.*)

On January 6, 2016, Mr. Saub also submitted an informal complaint regarding his medical services. (*Id.* at 8.) Mr. Saub complained that, "after many sick calls I'm still waiting to see a doctor, dental & mental health." (*Id.*) On January 23, 2016, Mr. Saub was informed that he had an appointment scheduled with the doctor. (*Id.*)

On February 11, 2016, Mr. Saub submitted an additional informal complaint regarding his medical services. (*Id.* at 10.) Mr. Saub complained that he had yet to have "the doctor, dentist, or mental health appointments [that] I have been told I have." (*Id.*) On February 24, 2016, Mr. Saub was informed his medical and mental health appointments had been scheduled. (*Id.*)

On February 22, 2016, Mr. Saub had a full mental health assessment. (Green Aff. ¶ 8.)

> Following that evaluation, Plaintiff was referred to psychiatry and advised to follow up with mental health as needed. He was seen for further mental health evaluation by a psychiatrist on March 7, 2016, at which time he was placed on medication for 90 days.[5] He was seen again to evaluate continuation of medication on June 19, 2016. There are also multiple mental health notes associated with weekly rounds while Plaintiff was in segregation, including in January, 2016.

(*Id.* (internal citations omitted).)

On June 7, 2016, Mr. Saub submitted a sick call request to restart his morning anti-depressant medication and nighttime sleeping pill that had suddenly stopped sometime previously. (Saub Aff. ¶ 59.) On June 19, 2016, mental health personnel informed Mr. Saub that his medications would resume. (*Id.* ¶ 60.) The next day, Mr. Saub again began to receive his morning anti-depressant and his night time sleeping medication. (*Id.* ¶ 61.)

---

[5] Prior to his appointment on March 7, 2016, Mr. Saub submitted an inmate request asking how long it would be before he saw someone about his mental health issues. (ECF No. 37-1, at 14.)

## C. Dental Issues

On November 29, 2015, the medical department at the Jail received a sick call request from Mr. Saub wherein he stated, "I believe [I have] 3 abscessed teeth in the back of my mouth that have been causing me extraordinary amount of pain . . . ." (ECF No. 37–1, at 2.)

On February 23, 2016, Mr. Saub submitted a grievance wherein he complained that he had been waiting months to see dental about his teeth and a doctor regarding his complaints of dizziness and nausea. (Saub. Aff. ¶ 21.) Mr. Saub did not receive a response to this grievance. (*Id.* ¶ 22.)

On March 7, 2016, Mr. Saub submitted an informal complaint regarding the "3 abscessed teeth" at the back of his mouth. (ECF No. 37–1, at 16.) Mr. Saub noted that it had been three months since he had requested dental care "and despite the extraordinary amount of pain in the back of my mouth, I have not seen anyone." (*Id.*) In response to this complaint, on March 16, 2016, Mr. Saub was informed that he was scheduled "for a dental sick call visit." (*Id.*)

On July 5, 2016, Mr. Saub was transferred "to WTRJ without ever being seen by dental . . . ." (Saub Aff. ¶ 62.) Since his transfer to WTRJ, Mr. Saub has "had four molars taken out that were causing extreme pain and infection." (*Id.* ¶ 58.)

## D. Shoulder Pain

On March 4, 2016, Mr. Saub submitted an emergency grievance wherein he complained that several weeks ago his collar bone started to hurt. (ECF No. 37–1, at 13.) Mr. Saub stated that, initially, the pain only occurred during physical activity, but recently, the pain was extreme and constant. (*Id.*) Staff told Mr. Saub to put in a sick call request. (*Id.*) On March 6, 2016, Mr. Saub submitted a sick call request stating that, "[s]omehow I seriously injured my collar bone & [I] am in an extreme amount of pain." (MR 157.) Mr. Saub asked to be seen as soon as possible. (*Id.*) Mr. Saub was "placed" on the sick call for March 9, 2016. (*Id.*) Mr. Saub's confinement

record indicates that Mr. Saub was in court on March 9, 2016, and, therefore, was not seen by medical. (Green Aff. ¶ 10 (citing MR 176).) According to Mr. Saub, inmates at the Jail

> including myself did not know of a medical appointment until security staff were ready to take us. We had no advance warning or notice.
> If any appointment was ever scheduled while at court, I was never informed about it or informed that it was missed until I saw CCS's Motion for Summary Judgment.

(Saub Aff. ¶¶ 38, 39 (internal paragraph numbers omitted).) Nevertheless, Mr. Saub failed to make a follow up request to be seen for shoulder pain. (*See* Green Aff. ¶ 10.)

## IV. ANALYSIS OF THE MOTION FOR SUMMARY JUDGMENT

### A. The Fourteenth Amendment Standard

The rights of a pretrial detainee complaining of inadequate medical care under the Fourteenth Amendment "are at least as great as the Eighth Amendment protections available to a convicted prisoner." *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983). To survive summary judgment on an Eighth Amendment claim, an inmate must demonstrate (1) that objectively the deprivation suffered or harm inflicted "was 'sufficiently serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). With respect to the denial of adequate medical care, "a prisoner must [demonstrate] acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A medical need is "serious" if it "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)).

In the context of delayed medical care, in order to demonstrate that the deprivation was objectively serious, a plaintiff must also establish that the delay in the provision of medical care "resulted in substantial harm." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001)); *see Webb v. Hamidullah*, 281 F. App'x 159, 165 (4th Cir. 2008). "[T]he substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Shabazz v. Prison Health Servs., Inc.*, No. 3:10CV190, 2012 WL 442270, at *5 (E.D. Va. Feb. 9, 2012) (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).

The subjective prong requires the plaintiff to demonstrate that a particular defendant acted with deliberate indifference. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Quinones*, 145 F.3d at 168 (citing *Farmer*, 511 U.S. at 837); *see Rich v. Bruce*, 129 F.3d 336, 338 (4th Cir. 1997). Thus, to survive a motion for summary judgment, the deliberate indifference standard requires a plaintiff to demonstrate that "the official in question subjectively recognized a substantial risk of harm" and "that the official in question subjectively recognized that his actions were 'inappropriate in light

of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich*, 129 F.3d at 340 n.2).

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citing *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986)). Absent exceptional circumstances, an inmate's disagreement with medical personnel with respect to a course of treatment is insufficient to state a cognizable constitutional claim, much less to demonstrate deliberate indifference. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970)). Furthermore, in evaluating a prisoner's complaint regarding medical care, the Court is mindful that "society does not expect that prisoners will have unqualified access to health care" or to the medical treatment of their choosing. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citing *Estelle*, 429 U.S. at 103–04). In this regard, the right to medical treatment is limited to that treatment which is medically necessary and not to "that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977). Moreover, "[i]t may not be seriously contended that any prisoner detained for however short a period is entitled to have all his needed elective medical care performed while in custody . . . ." *Kersh v. Bounds*, 501 F.2d 585, 589 (4th Cir. 1974).

### B. Corporate Liability

A private corporation cannot be held liable "for torts committed by [its employees] when such liability is predicated solely upon a theory of *respondeat superior*." *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999) (citations omitted). Instead, "a private corporation

14

is liable under § 1983 *only* when an official policy or custom of the corporation causes the alleged deprivation of federal rights." *Id.* (citations omitted). An unconstitutional official policy or custom

> can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (alteration in original) (quoting *Carter v. Morris*, 164 F.3d 215, 217 (4th Cir. 1999)). Additionally, "at the summary judgment stage, a Section 1983 plaintiff must offer sufficient evidence to support a finding that an 'affirmative causal link' exists between the alleged custom or policy and the complained of injury." *Brown v. Mitchell*, 327 F. Supp. 2d 615, 636 (E.D. Va. 2004) (quoting *Carter*, 164 F.3d at 221).

Mr. Saub does not seek to prove an unconstitutional official policy or custom under the first two methods. (*See* Compl. ¶¶ 42–44.) Instead, Mr. Saub predicates CCS's liability on its failure to triage or properly prioritize the medical needs of the inmates at the Jail. (*See id.* ¶ 42.) First, Mr. Saub contends that CCS has a practice

> of long delays and denial of . . . making an informed medical decision with regard to inmate medical needs and treating those needs is so persistent and widespread that . . . he heard at least weekly inmates complaining to medical staff and correctional staff about delays in the months of going to medical and dental and literally begging for treatment.

(*Id.* ¶ 43.) Second, Mr. Saub contends that CCS's failure to train its employees amounts to deliberate indifference to the medical needs of inmates at the Jail:

> Not a single employee of Defendant Correct Care Solutions had been trained in the necessity and legal duty that before deciding to immediately treat an inmate or schedule them for appointments months down the road they need to make an informed medical decision.

(*Id.* ¶ 44.)

## 1. Alleged Unconstitutional Practice

Mr. Saub contends that CCS has an unconstitutional practice of failing to provide prompt and appropriate medical care to the inmates at CCS. "It is well settled that 'isolated incidents' of unconstitutional conduct by subordinate employees are not sufficient to establish a custom or practice for § 1983 purposes." *Lytle*, 326 F.3d at 473 (quoting *Carter*, 164 F.3d at 220). Instead, the plaintiff must show "'numerous particular instances' of unconstitutional conduct in order to establish a custom or practice." *Id.* (quoting *Kopf v. Wing*, 942 F.2d 265, 269 (4th Cir. 1991)). In this matter, Mr. Saub fails to present evidence of numerous instances of CCS failing to provide prompt, constitutionally sufficient medical care.

With respect to Mr. Saub's headaches, nausea, dizziness, and low blood sugar, upon taking over medical care for inmates at the Jail, on December 1, 2015, CCS employees continued to provide Mr. Saub with Ibuprofen, as needed, for headaches and Phenergan, as needed, for nausea and vomiting. Additionally, CCS employees continued to provide Mr. Saub with an evening snack for his alleged low blood sugar, even though his medical record did not contain tests demonstrating that he had low blood sugar. In February of 2016, after an examination, medical personnel altered Mr. Saub's medications and discontinued his evening snack bag. Mr. Saub fails to demonstrate that he has a serious medical need for a snack bag or that the alteration of his medications amounted to deliberate indifference to his medical needs. Moreover, Mr. Saub fails to demonstrate that any delay in medical care with respect to his headaches, nausea, dizziness, and low blood sugar caused "substantial harm" to his person. *Mata*, 427 F.3d at 751 (quoting *Oxendine*, 241 F.3d at 1276); *see Webb*, 281 F. App'x at 165; *Brown*, 327 F. Supp. 2d at 636 (quoting *Carter*, 164 F.3d at 221).

The record is somewhat more equivocal with regard to the alacrity with which CCS employees addressed Mr. Saub's complaints of constipation and mental health issues. Mr. Saub began complaining to CCS employees in early December of 2015 about his constipation and had to wait until February 26, 2016, before he was provided medications to assist with bowel movements. Nevertheless, the record does not indicate that the failure of CCS employees to address the issue sooner caused Mr. Saub substantial harm. *Mata*, 427 F.3d at 751 (quoting *Oxendine*, 241 F.3d at 1276); *see Webb*, 281 F. App'x at 165; *Brown*, 327 F. Supp. 2d at 636 (quoting *Carter*, 164 F.3d at 221). Similarly, Mr. Saub began requesting assistance from CCS employees in early December of 2015 and had to wait until February of 2016 to have a mental health assessment, and until March of 2016 to receive medication to address his mental health issues. Once again, however, Mr. Saub fails to submit evidence that demonstrates that the failure of CCS employees to address the issue sooner caused substantial harm to his person.

The treatment of Mr. Saub's shoulder issues fails to provide significant probative evidence that CCS has an unconstitutional practice of delaying necessary medical care. On March 6, 2016, Mr. Saub submitted a sick call request stating that, "[s]omehow I seriously injured my collar bone & [I] am in an extreme amount of pain." (MR 157.) Mr. Saub was "placed" on the sick call for March 9, 2016. (*Id.*) Mr. Saub's confinement record indicates that Mr. Saub was in court on March 9, 2016, and, therefore, was not seen by medical. (Green Aff. ¶ 10 (citing MR 176).) The record does not indicate that Mr. Saub pursued further medical care with respect to his shoulder after that date. Apparently, the pain associated with Mr. Saub's shoulder dissipated of its own accord. Again, the record fails to demonstrate that any delay in care caused substantial harm to Mr. Saub's person. *Mata*, 427 F.3d at 751 (quoting *Oxendine*, 241 F.3d at 1276); *see Webb*, 281 F. App'x at 165; *Brown*, 327 F. Supp. 2d at 636 (quoting *Carter*, 164 F.3d at 221).

17

The record does not indicate that CCS provided Mr. Saub with dental care during his incarceration at the Jail. On November 29, 2015, Mr. Saub submitted a request for medical care for three teeth in the back of his mouth that were causing him significant pain. Although Mr. Saub continued to complain about these teeth and was assured in March of 2016 that a dental appointment had been scheduled, he was transferred from the Jail months later without ever having his dental issues addressed. Even if the failure to address Mr. Saub's dental issue could support a claim of deliberate indifference to his serious medical needs, Mr. Saub does not muster sufficient evidence to support his claim that CCS has an unconstitutional practice of failing to provide prompt and appropriate medical care to the inmates at the Jail. As noted above, such "'isolated incidents' of unconstitutional conduct by subordinate employees are not sufficient to establish a custom or practice for § 1983 purposes. Rather, there must be 'numerous particular instances' of unconstitutional conduct in order to establish a custom or practice." *Lytle*, 326 F.3d at 473 (internal citation omitted) (quoting *Kopf*, 942 F.2d at 269); *see Cardenas v. Lee Cty., Tex.*, 569 F. App'x 252, 256 (5th Cir. 2014) (citing *Arshad ex rel. Arshad v. Congemi*, No. 08–30061, 2009 WL 585633, at *1 (5th Cir. Mar. 9, 2009)).

### 2. Alleged Failure to Train

Next, Mr. Saub contends CCS is liable for failing to train its employees to properly assess an inmate's medical condition "before deciding to immediately treat an inmate or schedule them for appointments months down the road . . . ." (Compl. ¶ 44.) "Establishing [corporate] liability for a failure to train is a difficult task." *Cardenas*, 569 F. App'x at 257 (citing *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). "Establishing deliberate indifference generally requires a showing that the [corporation] failed to change its training methods in the face of several incidents in which the training methods caused constitutional deprivations." *Id.* (citing *Connick*, 563 U.S.

at 62; *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003)). "Only in the rarest of circumstances may 'the unconstitutional consequences of failing to train . . . be so patently obvious that a [corporation] could be liable under § 1983 without proof of a pre-existing pattern of violations.'" *Chennault v. Mitchell*, 923 F. Supp. 2d 765, 787 (E.D. Va. 2013) (quoting *Connick*, 563 U.S. at 64). Furthermore, the plaintiff must demonstrate "a direct causal link between" the failure to train "and the deprivation of federal rights." *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). Here, Mr. Saub fails to demonstrate that CCS has exhibited deliberate indifference by failing to adequately train its employees in assessing the medical needs of inmates and scheduling appointments according to the urgency of the medical need. Mr. Saub fails to direct the Court to any instance where he or another inmate presented an emergent medical need, was denied prompt care, and that lack of prompt care resulted in substantial harm.

The Court recognizes that Mr. Saub failed to receive any treatment from CCS for his dental problems. Those circumstances, however, do not support an inference that CCS exhibited deliberate indifference in training its employees to assess the urgency of an inmate's medical needs. Mr. Saub's November 29, 2015 sick call request was submitted prior to the time CCS assumed responsibility for the medical care of the inmates at the Jail. In the ensuing months, although Mr. Saub complained to medical personnel about other ailments and was seen by medical personnel for these ailments, he did not raise the issue of his teeth.[6] On March 7, 2016, Mr. Saub submitted an informal complaint regarding the "3 abscessed teeth" at the back of his mouth. (ECF No. 37-1, at 16.) Mr. Saub noted that it had been three months since he had requested dental care "and despite the extraordinary amount of pain in the back of my mouth, I have not seen anyone." (*Id.*) In response to this complaint, on March 16, 2016, Mr. Saub was informed that he was

---

[6] Although Mr. Saub swears that he submitted a grievance complaining about his teeth on February 23, 2016, there is no indication it was ever received by anyone in the medical department.

scheduled "for a dental sick call visit." (*Id.*) For some reason, that visit never occurred before his departure from the Jail on July 5, 2016. Nevertheless, Mr. Saub fails to submit evidence that reflects his dental problems were such that they required emergency care. *Turner v. Ruffin*, No. 1:16CV510 (CMH/JFA), 2017 WL 2405371, at \*4 (E.D. Va. June 2, 2017) (declining to find defendant acted with deliberate indifference where "during the six months that elapsed between the two appointments, plaintiff never requested pain medication and never sought urgent or emergency dental care"), *aff'd*, 699 F. App'x 251 (4th Cir. 2017); *Webb v. Ray*, No. 7:06CV00345, 2006 WL 1587461 at \*1–2 (W.D. Va. June 6, 2006) (concluding that allegations of six-month delay in providing dental care failed to state a claim of constitutional magnitude where plaintiff failed to allege dental problems requiring immediate treatment or that defendants knowingly disregarded an excessive risk to his dental health), *aff'd*, 215 F. App'x 246 (4th Cir. Jan. 30, 2007). Moreover, this single incident where Mr. Saub failed to receive prompt dental care must be contrasted with the numerous instances where his medical needs were addressed in constitutionally appropriate fashion. Thus, "these facts cannot establish the 'pattern of similar constitutional violations by untrained employees' that is necessary to demonstrate deliberate indifference on the part of [CCS]." *Cardenas*, 569 F. App'x at 257 (quoting *Connick*, 563 U.S. at 562). Furthermore, Mr. Saub fails to demonstrate that any delay in dental care caused "substantial harm" to his person. *Mata*, 427 F.3d at 751 (quoting *Oxendine*, 241 F.3d at 1276); *see Webb*, 281 F. App'x at 165; *Brown*, 327 F. Supp. 2d at 636 (quoting *Carter*, 164 F.3d at 221).

## V. MR. SAUB'S REQUEST TO STAY SUMMARY JUDGMENT

Generally, summary judgment is appropriate only "after adequate time for discovery." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[S]ummary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to

his opposition." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986). Thus, Fed. R. Civ. P. 56(d) provides that, "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may" deny the motion for summary judgment or issue any other appropriate order. Fed. R. Civ. P. 56(d). "The purpose of the affidavit is to ensure that the nonmoving party is invoking the protections of Rule 56[d] in good faith and to afford the trial court the showing necessary to assess the merit of a party's opposition." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1380 (D.C. Cir. 1988)). Thus, requests for relief under Rule 56(d) "should be denied . . . 'if the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment.'" *Works v. Colvin*, 519 F. App'x 176, 182 (4th Cir. 2013) (quoting *Ingle v. Yelton*, 439 F.3d 191, 195 (4th Cir. 2006)).

In his Discovery Declaration, Mr. Saub asserts that he needs the names of the inmates who were housed next to him during his incarceration at the Jail. (Discovery Decl. ¶ 2.) Mr. Saub contends that the "individual employees, supervisors, and managers of Correct Care Solutions that I am unable to name are liable to me . . . . In order to properly name the liable employees . . . I require discovery from Correct Care Solutions." (*Id.* ¶¶ 4, 5.) Mr. Saub further asserts that,

> I believe that there are documents in the possession of defendant Correct Care Solutions as well as Hampton Road Regional Jail, who is not a party in this action, that will support my claims regarding the practices and customs of Correct Care Solutions . . . .
> . . . .
> I have tried to obtain discovery by request to this Court on two separate occasions. The first, by informal request and the second by filing a request for production of documents from Correct Care Solutions, Hampton Roads Regional Jail, and Western Tidewater Region Jail.

(*Id.* ¶¶ 6, 8 (paragraph numbers omitted).)

In the first instance, it must be noted that the Court has encouraged Mr. Saub to pursue discovery and has instructed him in the proper manner in which to pursue discovery. Nevertheless, in the intervening months, Mr. Saub does not appear to have followed up with a proper discovery request to CCS and thereafter by filing a proper motion to compel with the Court. *See Pisano v. Strach*, 743 F.3d 927, 932 (4th Cir. 2014) (denying relief under Rule 56(d), where party was given ample opportunity to gather additional evidence, but failed to avail itself of that opportunity). Furthermore, Mr. Saub contends that he needs discovery to identify the CCS employees who were responsible for his care while confined at the Jail. Mr. Saub, however, fails to explain why the roughly two-hundred pages of medical records CCS attached to its Motion for Summary Judgment which contained the names of a host of CCS employees, were insufficient to address that concern.

Finally, Mr. Saub fails to coherently explain how the additional discovery sought would create a genuine dispute as to material fact so as to defeat the Motion for Summary Judgment filed by CCS. Instead, Mr. Saub simply swears that, "I believe that there are documents in the possession of defendant Correct Care Solutions as well as Hampton Road Regional Jail . . . that will support my claims regarding the practices and customs of the Correct Care Solutions." (Discovery Decl. ¶ 6.) This sort of "blanket assertion that discovery would be beneficial does not fulfill the requirement that a Rule 56(d) motion identify which facts are relevant to opposing a motion for summary judgment, and, particularly needed in this case." *Dufau v. Price*, 703 F. App'x 164, 167 (4th Cir. 2017). Mr. Saub does not explain how discovery would lead to demonstrating that CCS has an unconstitutional practice of failing to provide prompt and appropriate medical care to the inmates at the Jail or that CCS fails to train its employees to properly assess an inmate's medical condition, which resulted in substantial injury to his person. *See id.*; *Strag v. Bd. of Trustees, Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995) (denying

relief under Rule 56(d) where plaintiff "did not specifically allege why the information sought would have been sufficient to create a genuine issue of material fact such that it would have defeated summary judgment"). Accordingly, Mr. Saub is not entitled to relief under Rule 56(d).

## VI. CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment (ECF No. 31) will be GRANTED. Mr. Saub's claims against CCS will be DISMISSED. The action will be DISMISSED. Mr. Saub's Motion for a Change of Venue (ECF No. 50) will be DENIED. Mr. Saub remains free to pursue any claims against the individual employees of CCS or the Jail in a new action.

An appropriate Order shall accompany this Memorandum Opinion.

Date: 21 February 2019
Richmond, Virginia

/s/
John A. Gibney, Jr.
United States District Judge